## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT HANKINS,                    )
                                   )
       **Plaintiff**               )
                                   )          **C.A.No. 08-219 Erie**
vs.                                )
                                   )          **District Judge McLaughlin**
JEFFREY BEARD, et al               )
                                   )          **Chief Magistrate Judge Baxter**
       **Defendants**             )


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION


**I      RECOMMENDATION**

    It is respectfully recommended that Defendants' partial motion to dismiss [Document # 69] be granted in part and denied in part. More specifically,

    - the motion to dismiss should be granted as to the remaining Camp Hill Defendants **Kelchner, Steigerwalt, Taggart, Southers, Stubbs, Hubber, and Carberry** based upon statute of limitations. The Clerk of Courts should be directed to terminate these Defendants from this action.

    - the motion to dismiss should be granted as to Defendants **Sobina, Linderman, Wilson, and Bitner** as Plaintiff has failed to adequately allege their personal involvement in order to state a claim. The Clerk of Courts should be directed to terminate these Defendants from this action. The motion to dismiss in this regard should be denied as to Defendants Armel, Harris, Burns and Nickelson.

    - the motion to dismiss should be granted as to the due process claims.

    - the motion to dismiss should be granted in part and denied in part as to the access to courts claims. More specifically, the access to courts claims at SSS of the Original Complaint should be dismissed, while all other access claims contained in the Original Complaint should remain pending. The access to courts claims of the Amended Complaint remain pending as Defendants have not moved to dismiss them. The Clerk of Courts should be directed to terminate Defendant **Gent** from this action.

    - the motion to dismiss should be denied as to the retaliation claim at ¶ 27 of the Original Complaint. All other retaliation claims remain pending as Defendants have not moved to dismiss them.

    By separate order, a case management conference will be scheduled.

## II    REPORT

### A.    Relevant Procedural History

Plaintiff, a state prisoner currently incarcerated at the SCI-Albion, brought this civil rights action under 42 U.S.C. § 1983. Plaintiff originally filed this action in the U.S. District Court for the Middle District of Pennsylvania where it was assigned to U.S. District Judge Richard P. Conaboy.[1] The original complaint named twenty-nine Defendants, including several John Does.[2]

Judge Conaboy allowed Plaintiff to file an amended complaint naming 32 new Defendants[3] and deemed Plaintiff's amended complaint as a supplement to the original complaint. See Documents # 38, 60. Thereafter, Defendants filed a motion to dismiss. Document # 40. In partially granting the motion to dismiss, Judge Conaboy dismissed 23 of the Defendants and transferred the remainder of the case to this Court. This case was transferred into the Western District and assigned to U.S. District Judge Sean J. McLaughlin and the undersigned in July of 2008.

Here, Defendants have filed a partial motion to dismiss (document # 69), as well as an

---

[1] Plaintiff filed this action in the Middle District on December 11, 2006, and this case was subsequently transferred to this Court on July 31, 2008.

[2] Originally named as Defendants were: Jeffrey Beard, Warden William Stickman, Donald Kelchner, Major Mark Krysevig, Blaine Steigerwalt, Ian Taggart, Rick Southers, Michael Zaken, Brian Stubbs, Adam Hubber, John Snook, Officer Carberry, Daniel Hooper, Eric Armel, Sean Nose, Warden Harry Wilson, Correctional Officer Chapley, John Does 1-4, Gent, Robert Bitner, Sergeant Burns, Capt. Manchas, Nickelson, Popovich, and Deputy Superintendent Linda Harris.

[3] Named as Defendants in the Amended Complaint are: Correctional Officer March, Director Clifford O'Hara, Sergeant Keck, Mr. Warner, Correctional Officer Perez, Major Martin, Lt. Sanchez, J.T. Killeen, Snook, McEwin, Sgt. Cleaver, C.M. Free, Mrs. Kline, Correctional Officer Tarentella, Goresky, Burkhart, Lt. Steele, Superintendent Raymond Sobina, Mary Ann Kushner, Sharon Burks, Carol Scire, Christina Kennedy, Halley, Correctional Officer Garland, Moat, P.F. Allen, Klindenst, Correctional Officer Marsh, John Doe-Psychologist, Crumb, Mailroom Inspector Darlene Linderman, and Anthony Russ.

2

Answer (document # 70), and Plaintiff has filed an Opposition Brief (document # 74).  The issues are fully briefed and this motion is ripe for disposition by this Court.

**B.**     **Standards of Review**

1.     *Pro se* **Litigants**

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." <u>Haines v. Kerner</u>, 404 U.S. 519, 520-521 (1972).  If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. <u>Boag v. MacDougall</u>, 454 U.S. 364 (1982); <u>United States ex rel. Montgomery v. Bierley</u>, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); <u>Smith v. U.S. District Court</u>, 956 F.2d 295 (D.C.Cir. 1992); <u>Freeman v. Department of Corrections</u>, 949 F.2d 360 (10th Cir. 1991).  Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant.  <u>Gibbs v. Roman</u>, 116 F.3d 83 (3d Cir. 1997).  <u>See, e.g.</u>, <u>Nami v. Fauver</u>, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); <u>Markowitz v. Northeast Land Company</u>, 906 F.2d 100, 103 (3d Cir. 1990)(same).  Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

2.     **Motion to dismiss pursuant to 12(b)(6)**

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true.  <u>Erickson v. Pardus</u>, 551 U.S. 89, ___ 127

S.Ct. 2197, 2200 (2007); <u>Neitzke v. Williams</u>, 490 U.S. 319 (1989); <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. <u>Neitzke</u>; <u>Scheuer v. Rhodes</u>, 419 U.S. 232 (1974). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in <u>Conley v. Gibson</u>, 355 U.S. 41 (1957)). <u>See also</u> <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, ___, ___ S.Ct. ___, ___ 2009 WL 1361536 (May 18, 2009) (specifically applying <u>Twombly</u> analysis beyond the context of the Sherman Act). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to plaintiff. <u>Angelastro v. Prudential-Bache Securities, Inc.</u>, 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. <u>See</u> <u>California Pub. Employee Ret. Sys. v. The Chubb Corp.</u>, 394 F.3d 126, 143 (3d Cir. 2004) <u>citing</u> <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. <u>Twombly</u>, 550 U.S. at 556, <u>citing</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 556. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." <u>Id</u>. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." <u>Smith v. Sullivan</u>, 2008 WL 482469, at *1 (D.Del. February 22, 2008) <u>quoting</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 231 (3d Cir. 2008). "This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." <u>Phillips</u>, 515 F.3d at 232, <u>quoting</u> <u>Twombly</u>, 550 U.S. at 556 n.3.

### C. Judge Conaboy's decision

In his Memorandum Opinion and Order transferring this case, Judge Conaboy summarized Plaintiff's myriad claims by groups of Defendants:

> Named as Defendants in either the Original or the Amended Complaints are the following officials at Plaintiff's prior place of confinement, the State Correctional Institution, Camp Hill, Pennsylvania: Superintendent Donald Kelchner, Unit Managers Robert Marsh, Rick Southers and Blaine Steigerwalt, Superintendent Assistant Ian Taggart; Chief Hearing Examiner Robert Bitner; Paralegal Gent; Lieutenants Keck and Tarantella; Lieutenant Carberry, as well as Correctional Officers Warner, Adam Hubber, Brian Stubbs, Perez, Martin, Sanchez, J.T. Killeen, John Snook, McEwen, C.M. Free, Cleaver, Kline, Goresky, P.F. Allen, and Klinedinst.

> Plaintiff is also proceeding against eight (8) officials at a second prior place of confinement, the Fayette State Correctional Institution [...]Superintendent Harry Wilson; Deputy Superintendents Linda Harris, Krysevig, and Burns; Counselor Popovich; Psychologist John Doe; Lieutenants Daniel Hooper and Sean Nose; Captain Manchas; Majors Scott Nickleson and Eric Armel; Unit Manager Michael Zaken; Administrative Officer Mary Ann Kushner; Superintendent Assistant Carol Scire; Correctional Officers Halley, Chapley, Garland, Crumb, and Moat, as well as Mailroom Supervisor Darlene Linderman.

> Also named are four (4) officials at the Forest State Correctional Institution [...]: Superintendent Raymond Sobina; Superintendent Assistant Christina Kennedy, Lieutenants Burkhart and Steele.

> The remaining Defendants are Anthony Russ and H. Clifford O'Hara of the Pennsylvania Department of Corrections' Office of Professional Responsibility and the Department of Corrections' Secretary Jeffrey Beard, Deputy Secretary William Stickman and Chief Grievance Officer Sharon Burks.

Document # 60, pages 2-3. In a footnote, Conaboy indicated that "the John Doe Defendants named in the Original Complaint have been identified [by name] in the Amended Complaint." Id. at n.3. In fact, the Amended Complaint names Warner, Halley, Garaland (listed on the docket as Garland), and Moats as John Does 1-4, respectively. Document # 38, ¶¶ 24, 25.

Judge Conaboy dismissed twenty-three Defendants and transferred the remainder of the case to this Court in July of 2008. The docket lists the following Defendants as terminated by Judge Conaboy: Burks, Cleaver, C.M. Free, Goresky, Keck, J.T. Killeen, Klindinst, Kline, Marsh, Marsh, Martin, McEwin, O'Hara, Perez, Anthony Russ, Sanchez, Snook, John Snook, William Stickman, Tarentella, Warner, P.F. Allen and Jeffrey Beard.

5

**D. The Case Presently Before this Court**

In their brief in support of their motion to dismiss, Defendants summarize the remaining claims presently before this Court:

1) various allegations arising out of SCI-Camp Hill against the Camp Hill Defendants that were not expressly dismissed from this action by Judge Conaboy;

2) a due process claim that Krysevig and Zaken failed to ensure that Plaintiff receive his property upon his transfer from SCI-Camp Hill;

3) an allegation that Taggart (a Camp Hill Defendant) denied Plaintiff's grievance regarding his property, and that Kelchner (a Camp Hill Defendant) upheld that denial;

4) a retaliation claim alleging that Halley, Garland, and Moat took a § 1983 complaint out of Plaintiff's cell on December 6, 2005, and that Hooper and Zaken assisted them;

5) an allegation that paralegal Gent refused to provide Plaintiff with assistance in filing an appellate brief, and that Bitner denied a grievance Plaintiff filed regarding Gent's failure to do so;

6) a cryptic and nonsensical allegation that Zaken, Harris, Krysevig, Wilson, Nickelson, and Armel somehow denied Plaintiff access to assistance of some kind;

7) an allegation that Armel, Wilson, Burns, Nickelson, and Harris failed to properly supervise their subordinates;

8) a retaliation claim against Chapley based on the alleged retaliatory seizure of legal materials from Plaintiff on May 9, 2006;

9) an allegation that Hooper, Nose, and Manchas failed to return Plaintiff's legal materials to him;

10) an allegation that Popovich, Harris, Burns, Nickelson, Armel and Zaken retaliated against Plaintiff by refusing to allow him to telephone a private investigator;

11) a claim that Crumb, Zaken, Nickelson, Hooper, Wilson, and Manchas retaliated against Plaintiff by refusing to deliver certain property to him;

12) a claim that Burkhart retaliated against Plaintiff in a variety of manners;

13) a claim against Scire that she retaliated against him by refusing to provide him with requested legal materials;

14) a claim that Steele and Burkhart denied Plaintiff access to his legal materials.

Document # 71.

Defendants move to dismiss the Original and Amended Complaints, except for the following claims:

1)     the retaliation claim against Halley, Garland, Moat, Zaken and Hooper based on events allegedly occurring on December 6, 2005;

2)     the retaliation claim against Chapley based on events allegedly occurring on May 6, 2006;

3)     the retaliation claim against Crumb, Zaken, Nickelson, Hooper, Wilson, and Manchas based on Plaintiff's allegation that they failed to deliver Plaintiff's legal materials;

4)     the retaliation claim against Defendant Burkhart; and

5)     the retaliation claim against Defendant Scire based on the allegation that she refused to provide him requested materials.

Document # 69.

### E.    Statute of Limitations

Initially, Defendants move to dismiss all Camp Hill Defendants from this action as the claims against them are barred by the statute of limitations. The remaining Camp Hill Defendants are Kelchner, Steigerwalt, Taggart, Southers, Stubbs, Hubber, and Carberry.

The federal civil rights laws do not contain a specific statute of limitations for § 1983 actions. However, it is well established that the federal courts must look to the relevant state statute of limitations[4]. Wilson v. Garcia, 471 U.S. 261, 266 (1985) (later overruled only as to

---

[4] The statute of limitations is

"... intended to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights. *Crown, Cork & Seal Company v. Parker*, 462 U.S. 345, 352 (1983). Statutes of limitations "represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time." *United States v. Kubrick*, 444 U.S. 111, 117 (1979). The Supreme Court has recognized that statutes of limitations are not "simply technicalities," but rather, "fundamental to a well-ordered judicial system." *Board of Regents of the University of the State of New York v. Tomanio*,

claims under the Security Exchange Act of 1934). In Pennsylvania, the statute of limitations is two years from the date of the alleged violation. See Garvin v. City of Philadelpia, 354 F.3d 215, 220 (3d Cir. (Pa.) 2003); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451 (3d Cir.(Pa.) 1996).

The date upon which a § 1983 claim accrues is a matter of federal law. Albright v. Oliver, 510 U.S. 266, 280 n.6 (1994). A claim accrues when the litigant knew or had reason to know of the injury. Montgomery v. DeSimone, 159 F.3d 120, 126 (3d Cir.1998). Thus, the date when the plaintiff becomes aware, or should have become aware, of both the fact of injury and its causal connection to the defendant, triggers the limitations period. See Delaware State College v. Ricks, 449 U.S. 250, 258 (1980) (it is the wrongful act that triggers the start of the limitations period).

The complaint was received by the Clerk of Courts for the Middle District on December 11, 2006 and was deemed filed as of November 17, 2006 (pursuant to Judge Conaboy's Memorandum Opinion and Order - Document # 60, page 16). Plaintiff was transferred out of SCI-Camp Hill in April of 2004. Therefore, none of the allegations against employees of Camp Hill are within the statute of limitations and all those Defendants should be dismissed from this action.

In the Order accompanying the Memorandum Opinion, Judge Conaboy dismissed some of the Camp Hill Defendants. Despite his clear intent to dismiss all of the Camp Hill Defendants[5], not all of them were actually dismissed from this action when the case was

_____

446 U.S. 478, 487 (1980)."

United States v. Richardson, 889 F.2d 37, 40 (3d Cir.1989).

[5] See Document # 60, page 16 ("Plaintiff's claims against the SCI-Camp Hill defendants, are time barred and precluded from consideration, dismissal will be entered in favor of each of the SCI Camp Hill Defendants."; id. at 22 ("all claims against the SCI Camp Hill and Department of Corrections Defendants have been dismissed"); id. (The "remaining Defendants are employed at either SCI-Fayette or SCI-Forest."); id. at 21 ("As a result of the above determinations, the only remaining Defendants are correctional officials employed at SCI-Fayette and SCI- Forest."). Indeed, Judge Conaboy's transfer of this case pursuant to 29 U.S.C.

transferred from the Middle District.[6]

The motion to dismiss should be granted as to the remaining Camp Hill Defendants Kelchner, Steigerwalt, Taggart, Southers, Stubbs, Hubber, and Carberry. The Clerk of Courts should be directed to terminate these Defendants from this action.

### F. *Respondeat Superior*

Next, Defendants argue that Defendants Sobina, Linderman, Armel, Wilson, Burns, Nickelson, Harris, Bitner and Taggart[7] should be dismissed from this action because Plaintiff has not sufficiently alleged their personal involvement.

When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. Chinchello v.

---

§1404(a) into this district was based on the premise that none of the remaining Defendants were located within the Middle District of Pennsylvania. SCI-Camp Hill is located within the Middle District of Pennsylvania, while SCI-Forest and SCI-Fayette are located within this district.

[6] Plaintiff argues that the statute of limitations should be equitably tolled because Defendants' acts constitute a continuing violation. "The continuing violation doctrine [...] is an 'equitable exception to the timely filing requirement.'" Voices for Independence (VFI) v. Pennsylvania Dept. of Transp., 2007 WL 2905887, at * 4 (W.D.Pa.) quoting Cowell v. Palmer Township, 263 F.3d 286, 292 (3d Cir. 2001). "The application of the continuing violations theory may be appropriate in cases in which a plaintiff can demonstrate that the defendant's allegedly wrongful conduct was part of a practice or pattern of conduct in which he engaged both without and within the limitations period." McAleese v. Brennan, 483 F.3d 206, 218 (3d Cir. 2007) citing West v. Philadelphia Elec. Comp., 45 F.3d 744, 754 (3d Cir.1995). In other words, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." Brenner v. Local 514, United Bhd. Of Carpenters and Joiners of America, 927 F.2d 1283, 1295 (3d Cir. 1991). See also National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). Judge Conaboy addressed Plaintiff's arguments in this regard and found them meritless. Document # 60, page 16.

[7] Defendant Taggart should be dismissed from this action based upon the statute of limitations. See above.

Fenton, 805 F.2d 126, 133 (3d Cir. 1986).   Although a supervisor cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct."  Id. quoting Brown v. Grabowski, 922 F.2d 1097, 1120 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991).  The supervisor must be personally involved in the alleged misconduct.  Rode v. Dellarciprete, 845 F.2d 1958, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) quoting Rode, 845 F.2d at 1207).  Section 1983 liability cannot be predicated solely on *respondeat superior*.  Rizzo v. Goode, 423 U.S. 362 (1976); see also Monell v. Department of Social Services, 436 U.S. 658 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-1295 (3d Cir. 1997) (to hold police chief liable under § 1983 for violating female subordinate officer's rights, she was required to prove that he personally participated in violating her rights, that he directed others to violate her rights, or that he had knowledge of and acquiesced in his subordinates' violations).

### 1)     Sobina and Linderman

Plaintiff makes no factual allegations against Superintendent Sobina or Linderman, and so they should both be dismissed from this action.

### 2)     Armel, Wilson, Burns, Nickelson, and Harris

Plaintiff makes allegations based solely on a theory of supervisory liability against Defendants Armel, Wilson, Burns, Nickelson, and Harris.  See Document # 1, page 33 (an allegation that these five Defendants failed to properly supervise their subordinates).  Some personal involvement of the supervising official must be alleged.  Rode, 845 F.2d at 1207. Supervisory liability for § 1983 violations can be established by evidence showing that officials: participated in violating a plaintiff's rights; directed others to violate a plaintiff's rights; knew of,

and acquiesced in, their subordinates' violation of a plaintiff's rights; or knew of, and tolerated, past or ongoing misbehavior. Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 & n. 3 (3d Cir. 1995).

Here, Plaintiff makes allegations based solely on a theory of supervisory liability against Defendants Armel, Wilson, Burns, Nickelson, and Harris. A supervising public official has no affirmative duty to supervise and discipline his or her subordinates so as to prevent violations of constitutional rights. Notwithstanding, when a supervising official knowingly permits a continuing custom or policy that results in harm to the plaintiff, Section 1983 liability may attach. Colburn v. Upper Darby Township, 838 F.2d 663, 673 (3d Cir. 1988), cert. denied, 489 U.S. 1065 (1989). However, at a minimum such liability may be imposed "only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate." Id.

In this case, Plaintiff's allegations against Defendants Armel, Wilson, Burns, Nickelson and Harris at page 33 of the Original Complaint are based on classic *respondeat superior* claims, i.e., alleging only that they failed to properly supervise their subordinates. This is insufficient to state a civil rights claim against these Defendants. Rode, 845 F.2d at 1207.

However, as to Defendants Harris, Burns, Nickelson, and Armel, Plaintiff specifically alleges they retaliated against him by preventing him from telephoning a private investigator hired by his mother. Plaintiff alleges that these actions violated his constitutional right of access to the courts. Document # 1, Original Complaint, at ¶ 27. So, these Defendants should not be dismissed as Plaintiff has adequately alleged their personal involvement.

Additionally, as to Nickelson, Plaintiff alleges that he refused to deliver legal materials again thereby violating Plaintiff's constitutional right of access to courts. See Document #38, Amended Complaint, at ¶ 27. So, Defendant Nickelson should not be dismissed from this action.

Therefore, only Defendant Wilson should be dismissed from this action on this basis.

11

### 3) Bitner

In the original complaint, Plaintiff alleges that Defendant Bitner, the Chief Hearing Examiner at SCI-Camp Hill, denied a grievance (involving paralegal services provided by Defendant Gent). Specifically, Plaintiff alleges that he

> "filed a grievance on the matter which was finally answered by Bitner. Bitner aided the Gent by statting [sic] Plaintiff does not fit the criterion for paralegal assistance. This was after the assistance was given and failed to do his job. This further frustrated Plaintiff and eventionally [sic] led to the constitutional violations Plaintiff suffers to date."

Document # 1, page 33.

Plaintiff's allegation against Bitner fails to state a claim as the denial of a grievance is not sufficient personal involvement to state a § 1983 claim. See Rode 845 F.2d at 1208; Jefferson v. Wolfe, 2006 WL 1947721, at *17 (W.D.Pa.2006) (appeal on final review insufficient to establish personal involvement in alleged underlying violation); Ramos v. Pennsylvania Dept. Of Corrections, 2006 WL 2129148, *2 (M.D.Pa. July 27, 2006) (holding that the review and denial of grievances and subsequent administrative appeal does not establish personal involvement); Watkins v. Horn, 1997 WL 566080 at (E.D.Pa.1997) (concurrence in an administrative appeal process is insufficient to establish personal involvement). Accordingly, Defendant Bitner should be dismissed from this action.

### G.    The Due Process Claim

Plaintiff's original and amended complaints contain allegations of due process violations stemming from the confiscation of personal property.[8]

The due process clause, guaranteed through the Fourteenth Amendment of the United

---

[8] In Plaintiff's original and amended complaints, several of his allegations form the basis of due process, access to courts and retaliation claims simultaneously. To the extent that Plaintiff alleges that **legal** materials were confiscated, those allegations will be analyzed as an access to courts claim, and to the extent that Plaintiff alleges such materials were confiscated in retaliation for his filing of civil lawsuits, those allegations will be analyzed as retaliation claims.

States Constitution, provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. V; XIV. The Due Process Clause was promulgated to secure the individual from the arbitrary exercise of the powers of government. The "procedural" aspect of the Due Process Clause requires the government to follow appropriate procedures to promote fairness in governmental decisions; while the "substantive" aspect of the Clause bars certain government actions regardless of the fairness of the procedures used to implement them so as to prevent governmental power from being used for purposes of oppression. Daniels v. Williams, 474 U.S. 327, 329-33 (1986).

The analysis of a due process claim stemming from the deprivation of a property interest focuses on the existence of a post-deprivation remedy.[9] An unauthorized, intentional deprivation of property by government employees does not violate the Due Process Clause so long as there is a "meaningful post-deprivation remedy" available to the plaintiff. Hudson v. Palmer, 468 U.S. 517, 533 (1984). See also Tillman v. Lebanon County Correctional Facility, 221 F.3d 410, 421 (3d Cir. 2000) ("[W]here it is impractical to provide meaningful pre-deprivation process, due process will be satisfied by a meaningful post-deprivation remedy."). In Hudson, the Supreme Court reasoned that an intentional deprivation cannot be controlled in advance so as to adequately provide any pre-deprivation process. Id. See also Parratt v. Taylor, 451 U.S. 527 (1981)(held that a negligent deprivation of property by state officials does not violate the Fourteenth Amendment if an adequate post-deprivation state remedy exists), overruled on other grounds, Daniels, 474 U.S. 327. Thus, Plaintiff has no viable claim under the Constitution if an adequate post-deprivation remedy was available to him.

The prison grievance system has been deemed an adequate post-deprivation remedy. Tillman, 221 F.3d at 421. This Court takes judicial notice of the fact that the Department of Corrections has a grievance system in place. Because Plaintiff had adequate post-deprivation

--------

9 Presumably, Plaintiff claims that prison staff purposefully seized his property. Negligent destruction of property, on the other hand, does not base a federal lawsuit. Property rights do not convert otherwise unremarkable negligence claims into federal lawsuits. Daniels v. Williams, 474 U.S. 327, 332 (1986).

remedies available to him to contest the loss of his personal property, his due process claims fail.

Accordingly, the motion to dismiss should be granted in this regard.

**H.     Access to Courts**

Plaintiff alleges that his right of access to courts has been violated in several ways. Defendants move to dismiss some of these allegations for failing to state a claim upon which relief may be granted.

Prisoners have a constitutional right to "adequate, effective and meaningful" access to the courts. Bounds v. Smith, 430 U.S. 817 (1977).[10]  It is a well settled principle of law that in order to state a claim for a denial of the right of access to the courts, a plaintiff must also show actual injury. Lewis v. Casey, 518 U.S. 343 (1996).  Prisoners are limited to proceeding on access to courts claims challenging either their sentence (by direct or collateral attack) and their conditions of confinement, as the "impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  Id. at 355.  A plaintiff must allege both an underlying cause of action, whether anticipated or lost, and official acts frustrating the litigation.  Christopher v. Harbury, 536 U.S. 403 (2002).  See also Oliver v. Fauver, 118 F.3d 175 (3d Cir. 1997) (holding that inmate could not meet the actual injury standard of Lewis v. Casey as a result of the  alleged interference with legal mail); Lewis v. Cook County Bd. Of Commissioners, 2001 WL 435694 (7th Cir. 2001) ("To state a claim for the denial of access to the courts, a plaintiff must plead an injury in addition to the simple denial of access to the courts.").  Mere conclusory allegations that an inmate suffered prejudice are insufficient to sustain an access to courts claim.  Acre v. Walker, 58 F.Supp.2d 39 (W.D. N.Y 1999).

---

10   The right of access to courts may arise in the context of the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection Clause.  See Christopher v. Harbury, 536 U.S. 403, 415 n.12 (2002).

14

As the Third Circuit has recently explained:

> Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury' – that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit.  To that end, prisoners must satisfy certain pleading requirements: **The complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'**

Monroe v. Beard, 536 F.3d 198, 205-06 (3d Cir. 2008) quoting Christopher v. Harbury, 536 U.S. 403, 415 (2002) (emphasis added).  See also Johnson v. Hayman, 2008 WL 4865582 (D.N.J. Nov. 10, 2008).

_____In other words,  Plaintiff is required to allege that he has lost the opportunity to pursue a nonfrivolous or arguable underlying claim and that there is no other remedy available to him. Plaintiff raised several access to courts claims in both his original and amended complaints and so each will be addressed in turn.[11]

_____

[11] The Supreme Court has identified two general categories of denial of access to courts claims. Christopher v. Harbury, 536 U.S. 403, 412-13 (2002); see also Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety-Div. of State Police, 411 F.3d 427, 441 (3d Cir.2005). The first type are "forward-looking" claims which allege that official action frustrates a plaintiff in preparing and filing suit at the present time. Christopher, 536 U.S. at 413. Examples of such claims are where a prisoner-plaintiff alleges the inadequacy of a prison law library or where an inability to pay a filing fee prevents a plaintiff from bringing suit. See id. "The object of such a claim is to remove the barrier so that the plaintiff can pursue the separate claim for relief. In these cases, the constitutional deprivation is demonstrated by the very fact that the plaintiff cannot presently pursue his underlying case until the frustrating condition is removed." Gibson, 411 F.3d at 441. The second category covers "backward-looking" claims which allege that official acts "have caused the loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity to seek some particular order of relief.... These cases do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable. The ultimate object of these sorts of access claims, then, is not the judgment *in a* further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in no other suit in the future." Christopher, 536 U .S. at 413-14 (citations omitted). This case involves backward-looking claims.

### 1) The Original Complaint

First, Plaintiff alleges that prison staff refused to mail his legal mail to the court on May 23, 2003, thereby hindering his PCRA petition. Document # 1, ¶ 5. This claim is barred by the statute of limitations. See Section E, above.

Next, Plaintiff alleges that someone destroyed his property hindering "his ability to respond to pending court matters, which was dismissed in Carlisle, Pa., and other non-frivolous and meritorious constitutional rights violations claims which are lost due to Defendants action. Plaintiff cannot give the dates, names of people involved, nor documented evidence due to the destruction of his property." Id. at ¶ 8. In his Opposition Brief, Plaintiff expands on this allegation:

> Plaintiff's civil matter in Carlisle, PA was due to Defendants haven [sic] forced [sic] feed him and of which he was appealing, as well as Defendants knowledge of what the matter Carlisle, PA was about was dismissed due to not being able to meet a court deadline. This was due to Defendants withholding Plaintiff legal properties, denial of access to the courts, and denial of legal assistance to address the courts. Again, - Defendants last action was made known to Plaintiff Dec. 29, 2004, and that is the date of which Plaintiff had to file his Sec. 1983.

> The Carlisle, PA claim, and several Defendants who were dismissed as time barred were within Plaintiff's Sec. 1983 forms which were stolen from Plaintiff [...]. The appeal to Carlisle, PA is the very appeal Gent failed to provide legal assistance too, - as well as to assist Plaintiff in filing a proper habeas corpus to attack his criminal conviction, civil matters, and other claims which were rejected by the courts. By Department of Corrections staff actions to not turn over all discovery materials, and Plaintiff's legal properties needed for Plaintiff to have a fair [sic] via evidence to the jury in his criminal matter, Plaintiff received a hung jury first, - than [sic] a conviction.

Document # 74, pages 11-12. Liberally construing the original complaint and the opposition brief, this Court infers that Plaintiff is claiming that: 1) he was prevented from filing a §1983 action regarding being force-fed at SCI-Camp Hill and that he missed a deadline for filing based on statute of limitations; 2) he was prevented from filing a habeas corpus petition; and 3) a subsequent criminal matter resulted in his conviction because he was unable to assist in his own defense. These claims survive the motion to dismiss as they are specific enough under Monroe and Lewis v. Casey.

At ¶ 19 of the Original Complaint, Plaintiff alleges that SCI-Fayette staff confiscated his §1983 Complaint and prevented it from being filed on December 6, 2005. Document # 1, at

¶19. This claim should be dismissed because Plaintiff has been able to file that claim within this lawsuit and therefore he cannot show any actual injury.

Next, Plaintiff alleges that prison staff "singled out Plaintiff's legal materials on May 9, 2006 [...]. During this search, another of Plaintiff's §1983 complaints along with other materials needed to address the matter of his properties were taken while he tried to raise the funds to file his claim." Id. at ¶ 24. This allegation fails to state a viable claim as it lacks the specificity required by Monroe and Lewis v. Casey, and should be dismissed.

Plaintiff further alleges that staff prevented him from speaking with a private investigator hired by his mother. Id. at ¶ 27. This claim should be dismissed as Plaintiff has not alleged how this denial of a phone call deprived him of access to the courts.

Next, Plaintiff alleges that he may miss a November 2006 deadline in the U.S. Supreme Court. Id. at ¶28. This allegation should be dismissed as it was speculative at the time it was filed in that Plaintiff had not yet been harmed. However, Plaintiff raises the claim in the amended complaint after he missed the deadline and that claim remains pending.

At paragraphs 20 and 21, Plaintiff alleges

> Plaintiff constitutional rights were further violated when he was continuously denied meaningful access to the materials being held in the law library to learn the court rules and procedures to attack his conviction, and file a civil complaint on various constitutional non-frivolous and meritorious issues. Plaintiff's constitutional rights were further violated when he was denied by staff any legal assistance other than counsel: rather appointed or retained.

> Plaintiff constitutional rights were further violated when the paralegal assigned to aid Plaintiff did nothing but let Plaintiff's appeal be dismissed. Paralegal Gent never contacted Plaintiff again. Gent was to aid Plaintiff in legal matters but did not.

Id. These allegations should be dismissed as these claims have not met the standards of Monroe and Lewis v. Casey. Plaintiff has not described the actual "claims" or "remedies" with sufficient specificity. Generalities about insufficient time in the law library or the inabilities of an assigned paralegal are not enough. Further, as this is the only claim levied against Defendant Gent, he should be dismissed from this action. See Lewis v. Casey, 518 U.S. at 356 (a state need not provide legal assistants and law clerks to prisoners to ensure meaningful access to courts).

## 2) The Amended Complaint

The access to courts claims of the amended complaint[12] read as a narrative:

27. Due to Crumb, Zaken, Nickelson, Hooper, and Wilson's [sic] and Manchas [sic] refusal to deliver Plaintiff's legal and other properties [...], Plaintiff could not provide his attorney with needed documents and evidence in a criminal matter brought against Plaintiff by Defendants.

28. By not having the materials needed to formulate a proper defense, - nor a fair trial, - Plaintiff's access to the courts was not meaningful, and the outcome would have turned out differently had Defendants not acted in such a manner. [...]

30. On or about Nov. 27, 2006, Plaintiff was transferred to yet another RHU. Plaintiff arrived at Forest and notified staff of a court deadline he had on Nov. 29, or 30 of 2006. Plaintiff stated this to Steele and Burkhart, as well as his need for writing paper, envelopes, and Plaintiff's legal and other properties.

31. The request fell upon deaf ears because Plaintiff did not receive his legal and other propers [sic] until after the court deadline of Nov. 29, or 30 of 2006 [sic]. To make matters worse, Burkhart had Plaintiff placed unjustly on law library restriction. This further frustrated, impeded, stymied, hindered, and blocke [sic] Plaintiff access to the materials needed for Plaintiff address [sic] the court's [sic] and to attack his criminal conviction.

33. [...] Burkhart had Plaintiff's legal [...] properties confiscated on several occasions [...] Plaintiff was to appear in court and requested a hair cut prior to said appearance so as not to have any type of stigmas placed on him by the jury.

34. This was refused by Burkhart as well. On different occasions, Plaintiff tried to obtain his legal materials to present to counsel and the court in regards to his criminal matter brought against Plaintiff by Defendants. Each time he was denied.

35. Burkhart informed Plaintiff sometime in Feb. 2007, that he was going to court shortly. Plaintiff explained that he needed legal materials taken from him and placed in his properties, - but Burkhart stated that there was

---

[12] Plaintiff alleges that Correctional Officer Marsh of SCI-Camp Hill "refused to have Plaintiff's legal [...] properties delivered to Plaintiff after he was transferred" and because of Marsh's refusal, " Plaintiff could not raise claims in his habeas corpus petition [...], nor address issues with his attorney due to lack of legal properties." Document # 38, at ¶¶ 22- 23. These allegations regarding activities at SCI-Camp Hill occurred beyond the time frame of the applicable statute of limitations and Judge Conaboy previously dismissed the allegations against Defendant Marsh from this case. See Document # 60.

**no time because the transport should be at Forest already.**

36.     What was needed to present to counsel and the courts so that Plaintiff could try and put together a proper defense, and to have a fair trial, he was not able to take with him to court.  Had Plaintiff been permitted too [sic], - the outcome of the trial would have ended differently.

37.     Steele and Burkhart denied Plaintiff access to the legal materials within Plaintiff's properties needed to address counsel, prepare a proper defense, as well as access to the court to have a fair trial. [...]

42-43.  Plaintiff pleaded with [Scire] to permit him to receive materials need [sic] for Plaintiff's defense in a criminal matter.  The materials requested was [sic] needed for Plaintiff to receive a fair trial and meaningful access to the court. [ ...] Scire refused to provide said materials. [...]

Document # 37.

Defendants have not moved to dismiss these access to courts claims, and so they remain

pending.


### I.     Retaliation

Defendants argue that the retaliation claim at ¶27 of the original complaint should be

dismissed because Plaintiff has failed to state a claim upon which relief may be granted.  There,

Plaintiff alleges:

> By Zaken allowing his subordinates to continuously take and single out Plaintiff's legal materials, - he aid and let [sic] to Plaintiff's constitutional rights violations, as did others.  Too, - by Popovich, Harris, Burns, Nickelson, Armel, and Zaken's retaliatory acts in not allowing Plaintiff to telephone (Karim Shabazz) the private investigator hired by Plaintiff's mother, staff further hindered his efforts to access the court.  These retaliatory acts took place after Deputy Krysevig had already approved Plaintiff for the telephone call.

Document # 1, page 34, ¶ 27.  In his Opposition Brief, Plaintiff clarified that the private

investigator was hired by his mother to investigate a criminal matter.  Document # 74, page 13.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of

rights secured by the Constitution actionable under section 1983."  See White v. Napoleon, 897

F.2d 103, 111-12 (3d Cir.1990).  "Government actions, which standing alone, do not violate the

Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire

to punish an individual for exercise of a constitutional right."  Mitchell v. Horn, 318 F.3d 523,

530 (3d Cir. 2003), quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000).[13]

In order to state a *prima facie* case of retaliation, a prisoner plaintiff must demonstrate:

> 1) the conduct in which he was engaged was constitutionally protected;
>
> 2) he suffered "adverse action" at the hands of prison officials; and
>
> 3) his constitutionally protected conduct was a substantial or motivating factor in the decisions to discipline him.

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002), quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).[14]

Liberally construing Plaintiff's allegations, his filing of numerous lawsuits serves as the protected activity in order to satisfy the first prong of the *prima facie* case. See Christopher, 536 U.S. 403; Bounds, 430 U.S. 817 (the right of access to courts is constitutionally protected conduct).

To show the "adverse action" necessary to fulfill the second prong, the plaintiff must demonstrate that defendants' action were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah v. Al-Hafeez, 208 F.Supp.2d 520,535 (E.D. Pa. June 24, 2002) quoting Allah v. Seiverling, 229 F.3d at 225. Defendants argue that Plaintiff has not met his burden on this prong. However, it is at least plausible that the denial of this phone

---

13 The Third Circuit has directed that district courts should look carefully at allegations of retaliation. "Because of many prisoners' propensity to wield retaliation claims when confronted with disciplinary actions, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner." Sims v. Dragovich, 1999 WL 37621 (E.D.Pa. 1999), affirmed, 43 Fed.Appx. 523, 2002 WL 1800793 (3d Cir. 2002).

14 Following the satisfaction of a *prima facie* case of retaliation, the burden then shifts to the defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if plaintiff were not engaging in the constitutionally protected activities. Carter, 292 F.3d at 158. "Once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334.

call in order to confer with a private investigator investigating a criminal matter meets the adverse action prong. See Jacobs v. Beard, 172 Fed.Appx. 452 (3d Cir. 2006) (holding that losing parties to a lawsuit and being prevented from pursuing certain claims is adverse action).

Accordingly, the motion to dismiss should be denied in this regard.[15] As Defendants have not moved to dismiss the myriad other retaliation claims, they remain pending.

## III     CONCLUSION

For the foregoing reasons, it is respectfully recommended that that Defendants' partial motion to dismiss [Document # 69] be granted in part and denied in part. More specifically,

- the motion to dismiss should be granted as to the remaining Camp Hill Defendants **Kelchner, Steigerwalt, Taggart, Southers, Stubbs, Hubber, and Carberry** based upon statute of limitations. The Clerk of Courts should be directed to terminate these Defendants from this action.

- the motion to dismiss should be granted as to Defendants **Sobina, Linderman, Wilson, and Bitner** as Plaintiff has failed to adequately allege their personal involvement in order to state a claim. The Clerk of Courts should be directed to terminate these Defendants from this action. The motion to dismiss in this regard should be denied as to Defendants Armel, Harris, Burns and Nickelson.

- the motion to dismiss should be granted as to the due process claims.

- the motion to dismiss should be granted in part and denied in part as to the access to courts claims. More specifically, the access to courts claims at SSS of the Original Complaint should be dismissed, while all other access claims contained in the Original Complaint should remain pending. The access to courts claims of the Amended Complaint remain pending as Defendants have not moved to dismiss them. The Clerk of Courts should be directed to terminate Defendant **Gent** from this action.

- the motion to dismiss should be denied as to the retaliation claim at ¶ 27 of the Original Complaint. All other retaliation claims remain pending as Defendants have not moved to dismiss them.

By separate order, a case management conference will be scheduled.

---

[15] Defendants do not make either a motivating factor or legitimate penological interest argument.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Failure to timely file objections may constitute a waiver of appellate rights. <u>See</u> <u>Nara v. Frank</u>, 488 F.3d 187(3d Cir.  2007).

S/ Susan Paradise Baxter<br>
SUSAN PARADISE BAXTER<br>
Chief United States Magistrate Judge

Dated: May 31, 2009