## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT HANKINS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **C.A. No. 08-219 Erie** |
| **v.** | ) |
| | ) **District Judge Sean J. McLaughlin** |
| **MAJOR MARK KRYSEVIG, <u>et al.</u>** | ) **Magistrate Judge Susan Paradise Baxter** |
| | ) |
| **Defendants.** | ) |

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I       RECOMMENDATION**

It is respectfully recommended that Defendants' Motion for Summary Judgment [ECF No. 91] be granted.  It is further recommended that Plaintiff's motion for a temporary and preliminary injunction [ECF No. 116] be denied and that the Clerk of Courts be directed to close this case.

**II      REPORT**

**A.       Relevant Procedural History**

Plaintiff, a state prisoner currently incarcerated at SCI-Rockview, brought this civil rights action under 42 U.S.C. § 1983.  Prior to his incarceration at SCI-Rockview, Plaintiff was housed at SCI-Albion, SCI-Forest, SCI-Fayette and SCI-Camp Hill.  He originally filed this action in the United States District Court for the Middle District of Pennsylvania where it was assigned to District Judge Richard P. Conaboy.  The Original Complaint [ECF No. 1] named twenty-nine Defendants, including several John Does.  [<u>See</u> ECF No. 75 at p. 2 n.2 (listing all original Defendants)].

Judge Conaboy allowed Plaintiff to file an Amended Complaint naming thirty-two new Defendants and deemed it as a supplement to the Original Complaint.  [<u>See</u> ECF Nos. 38, 60;

1

see also ECF No. 75 at p. 2 n.3 (listing Defendants named in the Amended Complaint)]. Thereafter, Defendants filed a motion to dismiss. [ECF No. 40]. In partially granting the motion, Judge Conaboy dismissed many of the Defendants, including those from SCI-Camp Hill, and transferred the remainder of the case to this Court. [ECF No. 60]. It was assigned to District Judge Sean J. McLaughlin and referred to me in July of 2008.

After this case was transferred to this Court, Defendants filed a partial motion to dismiss [ECF No. 69]. By Report and Recommendation ("R&R") dated May 31, 2009, I recommended that the motion be granted in part and denied in part. [ECF No. 75]. The R&R was adopted as the Opinion of the Court on July 2, 2009. [ECF No. 78].

The only remaining claims in this action are certain access-to-courts and/or retaliation claims[1] against the following defendants:

-- the "FCI-Fayette Defendants": Mark Krysevig, who at the relevant time was the Deputy Superintendent for Facilities Management; Michael Zaken, who at the relevant time was a Unit Manager; Daniel Burns, the Director of Centralized Services from July 2006 to May 2008; Samuel Popovich, a Correctional Counselor from April 2005 to August 2007; Scott Nickelson, the Major of the Guard and an Acting Deputy Superintendent for Central Services; Deputy Superintendent Linda Harris; Carol Scire, the Superintendent's Assistant; Lt. Daniel Hooper; Eric Armel; Lt. Sean Nose; Corrections Officer ("CO") Stephen Chapley; Security Capt. Eric Manchas; CO Jason Halley; CO Eric Garland; CO George Moats; and, Lt. Adam Crumb.

-- the "FCI-Forest Defendants": Lt. Raymond Burkhart and Lt. Dana Steele.

The parties have summarized the remaining claims that are before the Court as follows [see ECF No. 93 at pp. 6-7; ECF No. 100 at pp. 8-12]:

---

[1] Plaintiff spends a good portion of his opposition brief arguing that his equal protection rights have been violated. There is no equal protection claim before the Court. This action has for some time been limited solely to access-to-court and retaliation claims. [See, e.g., ECF No. 66].

1 a claim alleging that Krysevig and Zaken denied Plaintiff access to courts and retaliated against him because some of his property was destroyed at SCI-Camp Hill [ECF No. 1 at ¶¶ 9-18];

2 a retaliation claim alleging that CO Halley, CO Moats, CO Garland, Lt. Hooper, and Zaken confiscated a prepared civil complaint from Plaintiff's cell during a search conducted on December 6, 2005, in retaliation for him intending to file the complaint and for making numerous complaints against Department of Corrections ("DOC") staff [ECF No. 1 at ¶ 19; ECF No. 38 at ¶ 24];

3 a retaliation claim alleging that CO Chapley confiscated Plaintiff's legal materials during a cell search conducted on May 9, 2006, in retaliation for a May 2, 2006, excessive-force complaint Plaintiff had made against him [ECF No. 1 at ¶ 24];

4 an access-to-courts claim against Lt. Hooper, Lt. Nose, and Capt. Manchas, alleging that they refused to return Plaintiff's confiscated legal materials to him after the May 9, 2006, cell search [ECF No. 1 at ¶ 25];

5 an access-to-courts claim against Zaken, alleging generally that he allowed his subordinates to confiscate Plaintiff's legal materials [ECF No. 1 at ¶ 27];

6 a retaliation claim alleging that Popovich, Harris, Burns, Nickelson, Armel, and Zaken refused to allow Plaintiff to make a telephone call to a private investigator despite the fact that Krysevic had approved the call [ECF No. 1 at ¶ 27];

7 an access-to-courts/retaliation claim against Crumb, Zaken, Nickelson, Lt. Hooper and Capt. Manchas alleging that they denied Plaintiff access to his legal property following the May 9, 2006, cell search, which he "needed to formulate a proper defense" to a criminal case pending against him at the time [ECF No. 38 at ¶¶ 27-28];

8 an access-to-courts claim alleging that Lt. Steele and Lt. Burkhart failed to deliver Plaintiff's legal properties to him promptly upon his arrival at SCI-Forest [ECF No. 38 at ¶¶ 30-31];

9 a retaliation and/or access-to-courts claim alleging that Lt. Burkhart confiscated Plaintiff's legal property on one or more occasions [ECF No. 38 at ¶ 33];

10 a retaliation claim alleging that Lt. Burkhart did not permit Plaintiff to have a haircut on the day he was going to a court hearing [ECF No. 38 at ¶ 33];

11 a claim that Lt. Burkhart did not permit Plaintiff to conduct legal property exchanges, including immediately before he was scheduled to attend a court hearing [ECF No. 38 at ¶¶ 34-36];

12 a claim that Lt. Steele and Lt. Burkhart denied Plaintiff access to his legal materials on unspecified dates [ECF No. 38 at ¶ 37];

13 a retaliation/access-to-courts claim against Scire alleging that she did not provide Plaintiff with documents he needed "for [his] defense in a criminal matter." [ECF No. 38 at ¶¶ 42-43]; and,

14 a claim that Zaken and Krysevig denied him access to courts by "continuously denying Plaintiff [sic] to receive any assistance other than counsel or paralegal

being as though I cannot properly access the materials needed to have a meaningful access to the courts[.]" [ECF No. 1 at ¶ 22].[2]

On January 15, 2010, Defendants filed a motion for summary judgment as to all of Plaintiff's claims [ECF No. 91]. They filed with their motion the required Concise Statement of Facts ("CSF") [ECF No. 92] and brief in support [ECF No. 93].

On April 1, 2010, after having received several extensions, Plaintiff filed a brief opposing Defendants' motion. [ECF No. 100]. He also filed his own CSF [ECF No. 101], to which he attached approximately 435 pages of exhibits.

On or around April 12, 2010, Plaintiff was transferred from SCI-Albion to SCI-Rockview.

On April 30, 2010, Defendants filed their reply to Plaintiff's CSF [ECF No. 102] and to his opposition brief [ECF No. 103]. Plaintiff requested an extension to file a surreply because he was still awaiting the delivery of some of his property from SCI-Albion. [ECF No. 104]. Plaintiff's request was granted and he was ordered to file his surreply on or before June 14, 2010.

Next, Plaintiff filed a motion for preliminary injunction [ECF No. 106] in which he raised issues regarding access to paper, envelopes, postage and a mailbox. He also contended that he did not have access to all of his legal property – a chief complaint he has raised throughout this litigation. Pursuant to DOC policy, an inmate in disciplinary custody, such as Plaintiff, is permitted to maintain in his cell any combination of personal property that fits into one standard sized records center box. Excess property is maintained in a storage room. An inmate is permitted to exchange legal materials from his cell with stored legal materials once every thirty days. The Program Review Committee ("PRC") may authorize more frequent exchanges based upon a demonstrated need that the inmate requires additional exchanges for

---

[2] Plaintiff initially raised access-to courts-claims as part of Claim 2, Claim 3, and Claim 6. Those claims were dismissed pursuant to the Court's July 2, 2009, Memorandum Order, which adopted the May 31, 2009, R&R as the Opinion of the Court. The other access-to-courts claims that were dismissed by way of that same Memorandum Order were those allegations made at ¶ 5 and ¶ 28 of the Original Complaint. [ECF No. 78; ECF No. 75 at pp. 16-17].

4

active litigation. Such legal material exchanges, however, may not exceed one per week. [See Pl's Ex. 42, ECF No. 101-5 at p. 2; see also ECF No. 109, 6/4/10 Hr'g Tr. at p. 5; ECF No. 112, 6/18/10 Hr'g Tr. at pp. 18, 21; see also the individual defendant's declarations at ECF No. 92, in which they explain this policy].

On June 4, 2010, I presided over a telephonic hearing on Plaintiff's preliminary injunction motion. [ECF No. 109, 6/4/10 Hr'g Tr.]. At the conclusion of the hearing, I directed Lt. Bibey from SCI-Rockview and Defendants' counsel to look into certain matters and scheduled the hearing to reconvene on June 18, 2010. [Id. at pp. 1-22].

During the hearing on June 18, 2010 [ECF No. 112, 6/18/10 Hr'g Tr.], it was shown that Plaintiff did have access to paper, postage, etc. It was also explained that as of that date at least ten boxes of his property had been transferred from SCI-Albion to SCI-Rockview. [Id. at pp. 18-19]. Plaintiff complained that even though much, if not all, of his property had been transferred, he had not had access to it because all of his requests for property exchanges had been denied. [Id. at 19-20].

At the conclusion of the hearing, I issued an oral R&R, which was subsequently adopted by the Court, in which I recommended that Plaintiff's motion for injunction be granted to the extent he sought a legal property exchange and denied in all other respects. [Id. at 30-33; ECF No. 118]. I also granted Plaintiff another extension until July 16, 2010, to file a surreply to Defendants' motion for summary judgment.

On July 25, 2010, Kurt Granlund, a Unit Manager at SCI-Rockview, filed with the Court a declaration explaining that Plaintiff has been housed in the Restrictive Housing Unit ("RHU") at that institution since he arrived there. Granlund stated that "[t]he proper method of requesting a legal property exchange at that institution is to submit a request slip to the RHU Lieutenant. These requests slips are kept and a record of all property exchanges is also maintained on the unit." [ECF No. 113, Ex. A, Granlund Decl. at ¶ 5]. Granlund explained that Plaintiff "sent a request slip to the Lieutenant shortly after his arrival at SCI-Rockview, *and received a legal property exchange on April 22, 2010.*" [Id. at ¶ 6 (emphasis added)]. Plaintiff had not submitted a request slip to the Lieutenant since that date, Granlund stated. Despite the fact that

he had not properly requested a property exchange, in accordance with this Court's June 18, 2010, Order *Plaintiff was permitted to and did conduct a legal property exchange on June 22, 2010.* [Id. at ¶¶ 7-8].

On July 22, 2010, Plaintiff filed yet another motion for preliminary injunction [ECF No. 116] in which he once again complains that he does not have sufficient access to his legal property or to pens, paper, etc. He admits that he recently received a legal property exchange but complains that he will need another one "to address the Defendants' accusations in this matter this month also." [Id. at p. 3].

It is recommended that Plaintiff's pending motion for an injunction [ECF No. 116] be denied for the same reasons set forth in my June 18, 2010, R&R denying his previous motion for an injunction. [ECF No. 112, 6/18/10 Hr'g Tr. at pp. 30-34]. The record before this Court establishes that Plaintiff has access to the material he needs to file documents with the courts. The motion should also be denied because the Defendants have established that Plaintiff received a legal property exchange on April 22, 2010, and again on June 22, 2010. [ECF No. 113, Ex. A, Granlund Decl.].

Finally, the deadline for Plaintiff to file a surreply has expired. He is not entitled to any more extensions. Plaintiff has had more than sufficient opportunity to have access to the materials he needs to litigate this case and to respond to all of the issues raised in Defendants' motion for summary judgment. Their motion is ripe for review.

**B.     Standards of Review**

      **1.     *Pro se* Litigants**

*Pro se* pleadings, "however inartfully pleaded,"must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-21 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or the litigant's unfamiliarity with pleading requirements.

Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 647 (7th Cir. 1992); Freeman v. Dep't of Corr., 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990) (same). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

### 2.  Motion for summary judgment pursuant to Rule 56

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Co., 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation

7

continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-61 (3d Cir. 1989) (the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (*i.e.*, depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," *i.e.*, if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-49.

Defendants contend that Plaintiff's CSF is insufficient to create a genuine issue of material fact and also should be stricken from the record because much of it does not correspond to the paragraphs set forth in their CSF, as required by Local Rule 56.C.1. Defendants are correct that because Plaintiff has failed to comply with the local rules, the Court is justified in concluding that he has admitted much of the facts outlined in Defendants' CSF. On this basis alone, given that the Court can deem much of Defendants' CSF undisputed, the Court should grant the summary judgment motion since they have met their initial summary judgment burden to show no genuine issue of material fact.

Nevertheless, in the alternative and in an abundance of caution, I have considered the

facts Plaintiff has alleged to the extent that those facts are supported by admissible evidence.[3] While the Court is mindful of its duty to review the record as a whole, it is not for the Court to search the record to find issues of fact. On the contrary, it is Plaintiff's burden to detail the material in the record controverting the Defendants' position. See, e.g., Schulz v. Celotex Corp., 942 F.2d 204, 210 (3d Cir. 1991).

## C.    Discussion

All of Plaintiff's claims are either access-to-courts claims or retaliation claims.

### 1.    Access To Courts[4]

---

[3]  Although Plaintiff's exhibits end with the number 97, he did not file exhibits numbered 19-33, or 53-58, or 87. Plaintiff also frequently cites to his own "declaration" [Pl's Ex. 93, ECF No. 101-9 at pp. 27-32], which is neither a sworn affidavit nor an unsworn declaration under penalty of perjury as required by 28 U.S.C. § 1746. That "declaration" is in fact unsigned and also appears to be missing pages. It therefore is not compliant with Rule 56(e) and does not contain admissible evidence. Defendants specifically pointed out in their response to Plaintiff's CSF [ECF No. 102] that Plaintiff's "declaration" was incomplete and that he did not file some exhibits that he cited.

Plaintiff has filed numerous documents with the Court since the date Defendants highlighted the deficiencies in his declaration. Nevertheless, he has not filed a complete and proper sworn affidavit or unsworn declaration. Plaintiff cannot fault Defendants for failing to do so, as his frequent filings in this action, as well as this Court's findings made after the testimony given during the June 18, 2010, hearing, establish that he has access to the pens, paper, and postage necessary to do so.

[4]  The Supreme Court has identified two general categories of denial of access to courts claims. Christopher v. Harbury, 536 U.S. 403, 412-13 (2002); see also Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety-Div. of State Police, 411 F.3d 427, 441 (3d Cir. 2005). The first type are "forward-looking" claims which allege that official action frustrates a plaintiff in preparing and filing suit at the present time. Christopher, 536 U.S. at 413. Examples of such claims are where a prisoner-plaintiff alleges the inadequacy of a prison law library or where an inability to pay a filing fee prevents a plaintiff from bringing suit. See id. "The object of such a claim is to remove the barrier so that the plaintiff can pursue the separate claim for relief. In these cases, the constitutional deprivation is demonstrated by the very fact that the plaintiff cannot presently pursue his underlying case until the frustrating condition is removed." Gibson, 411 F.3d at 441. The second category covers "backward-looking" claims which allege that official acts "have caused the loss or inadequate settlement of a meritorious case, the loss of an opportunity to sue, or the loss of an opportunity to seek some particular order of relief.... These cases do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable. The ultimate object of

Prisoners have a constitutional right to "adequate, effective and meaningful" access to the courts.  Bounds v. Smith, 430 U.S. 817 (1977); Lewis v. Casey, 518 U.S. 343 (1996); see also Oliver v. Fauver, 118 F.3d 175, 177 (3d Cir. 1997).  "However, prisoners may only proceed on access-to-courts claims in two types of cases": that is, when defendants' actions have frustrated litigation in which prisoners are challenging either their: (1) criminal judgment of sentence on direct or collateral review; or, (2) conditions of confinement in a civil rights case. Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008) (per curium) citing Lewis, 518 U.S. at 354-55.  The Constitution does not "guarantee inmates the wherewithal to transform themselves into litigating machines capable of filing everything from shareholder derivative actions to slip-and-fall claims." Lewis, 518 U.S. at 355.  Rather, they must only be supplied with those tools "need[ed] in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." Id.

Importantly, where, as is the case here, a prisoner is asserting that the defendants' actions have inhibited his opportunity to present a past legal claim, he must show: *(1) that he suffered an "actual injury" – meaning that he lost a chance to pursue a "non frivolous" or "arguable" underlying claim; and (2) that he has no other "remedy that may be awarded as recompense" for the lost claim other than in the present denial of access suit.*  Monroe, 536 F.3d at 205 (emphasis added) citing Christopher, 536 U.S. at 415.[5]  Mere conclusory allegations that an inmate suffered prejudice are insufficient to proceed with an access-to-court claim.  Id. at 205-

---

these sorts of access claims, then, is not the judgment *in a* further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in no other suit in the future."  Christopher, 536 U .S. at 413-14 (citations omitted).  This case involves backward-looking claims.

   [5]  The Court in Christopher, 436 U.S. at 415, explained:  "It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation.  It follows, too, that when the access claim (like this one) looks backward, the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought.  There is, after all, no point in spending time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element."

06 quoting Christopher, 536 U.S. at 415.

The Third Circuit Court has further described the Lewis holding:

> to be able to bring a viable claim, the plaintiff inmates ha[ve] to show direct injury to their access to the courts. The Court explained that an inmate could show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or [he could show] that he had suffered arguably actionable harm that he wanted to bring before the courts, but was so stymied by the inadequacies ... that he was unable even to file a complaint.

Reynolds v. Wagner, 128 F.3d 166, 183 (3d Cir. 1997) (internal citations and quotations omitted).


### 2. Retaliation

It is well established that "[r]etaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983." See White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990). "Government actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) quoting Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000). "Because of many prisoners' propensity to wield retaliation claims when confronted with disciplinary actions, district courts must view prisoners' retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner." Sims v. Dragovich, No. 95-cv-6753, 1999 WL 371621, at *3 (E.D.Pa.1999) citing Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995).

In order to state a *prima facie* case of retaliation, a prisoner plaintiff must demonstrate:

    1)    the conduct in which he was engaged was constitutionally protected;

    2)    he suffered "adverse action" at the hands of the defendant;[6] and

---

[6] To show the "adverse action" necessary to fulfill the second prong, the plaintiff must demonstrate that defendants' action were "sufficient to deter a person of ordinary firmness from

3)  his constitutionally protected conduct was a substantial or motivating factor in the decisions to impose the adverse action.

Carter v. McGrady, 292 F.3d 152, 157-58 (3d Cir. 2002) quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).

Following the satisfaction of a *prima facie* case of retaliation, the burden then shifts to the defendants to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if plaintiff were not engaging in the constitutionally protected activities. Carter, 292 F.3d at 158. Stated another way, "[o]nce a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334. In evaluating a prison official's opinion, "prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979).

### 3. Plaintiff's Claims Against the SCI-Fayette Defendants

#### (a) Claims against Krysevig and Zaken for the destruction of Plaintiff's property at SCI-Camp Hill (Claims 1)

On or around April 7, 2004, Plaintiff was transferred from SCI-Camp Hill to SCI-Fayette for placement in its Long Term Segregation Unit ("LTSU"). Shortly after he arrived at SCI-Fayette, Plaintiff complained that SCI-Camp Hill had not shipped all of his property with him upon transfer. [See ECF No. 92, Krysevig Decl. at ¶¶ 2-3, Zaken Decl. at ¶¶ 2-3]. The property was never shipped to SCI-Fayette and it eventually was destroyed at SCI-Camp Hill.[7]

---

exercising his [constitutional] rights." Allah v. Al-Hafeez, 208 F.Supp.2d 520, 535 (E.D.Pa. June 24, 2002) quoting Allah v. Seiverling, 229 F.3d at 225.

[7] Plaintiff has submitted documents showing that SCI-Camp Hill informed him that the property being held there was excess property and that he "must provide an address for this property to be shipped, which cannot be another SCI." [ECF No. 101-1 at p. 10]. Plaintiff wanted the excess

In Claim 1, Plaintiff asserts that Krysevig, who was SCI-Fayette's Deputy Superintendent for Facilities Management, and Zaken, who was a Unit Manager there, are responsible for what happened to his property at SCI-Camp Hill because they did not "see[ ] to it that [his] properties were delivered to him." [ECF No. 1 at ¶¶ 9-18]. Plaintiff contends that Krysevig's and Zaken's actions/inaction were retaliatory and that they denied him access to courts.

The summary judgment record shows that neither Krysevig nor Zaken can be held liable to Plaintiff for what happened to his property at SCI-Camp Hill. According to policy and procedure, an inmate is transferred with a specified amount of property and is required to

property shipped to SCI-Fayette. [Id. at pp. 19-20, 33]. Zaken contacted SCI-Camp Hill in order to resolve his request regarding his property. In an email dated November 19, 2004, Zaken wrote to Robert Marsh, Acting SMU Unit Manager at SCI-Camp Hill:

> During Secretary Beard's last visit to the LTSU, he assured [Plaintiff] that we would pursue and resolve his request regarding his property. Whether or not this deviates from standard practice is beyond my authority.
>
> I can assure you that the inmate will be brought into compliance at SCI-Fayette. Whatever the problem was at Camp Hill, the end result will be the same, the inmate will be brought into property compliance per DOC policy.

[Pl's Ex. 2, ECF No. 101-1 at p. 4; see also ECF No. 101-1 at pp. 5-10, 16-17, 35]. On December 6, 2004, Marsh wrote the following email to Zaken:

> [Plaintiff] was informed on April 6, 2004 that he had 30 days to inform us of his intentions with the 3 boxes of excess property/contraband. We held his property until he exhausted his administrative remedies. Both his grievances in regard to this issue were dismissed at final review because [Plaintiff] neglected to forward the required documentation needed to form final review. This occurred 06/15/2004 and 8/16/2004. Since we had provided him ample time to inform us of his wishes and he neglected to do so, the Property Officer had his excess/property contraband destroyed.

[Id.]

Plaintiff takes issue with the manner in which personnel at SCI-Camp Hill handled his excess property and contends that they did not follow DOC policy and procedures. Those allegations are not relevant as Judge Conaboy dismissed the SCI-Camp Hill Defendants from this action.

provide the shipping institution (in this case, SCI-Camp Hill) with instructions regarding any excess property that he may have. The receiving institution (in this case, SCI-Fayette) has no authority over any property that is not shipped with the inmate. [ECF No. 92, Krysevig Decl. at ¶¶ 4-5, Zaken Decl. at ¶¶ 4-5]. Both Krysevig and Zaken have submitted declarations in which they state that although they were not required to do so pursuant to policy or practice, they contacted SCI-Camp Hill in order to assist Plaintiff in his effort to get his property shipped from there to SCI-Fayette. Their role in that effort was limited to contacting individuals at SCI-Camp Hill to encourage them to deliver the property. By the time Krysevig became involved in the matter, Plaintiff's property already had been destroyed. [ECF No. 93, Krysevig Decl. at ¶¶ 6-8, Zaken Decl. at ¶¶ 6-8].

Although Plaintiff insists that Krysevig and Zaken did not do enough to assist him in getting his property transported from SCI-Camp Hill to SCI-Fayette, the decision to destroy his excess property was made by SCI-Camp Hill personnel. Absent from the summary judgment record is any evidence to support a finding that either Krysevig or Zaken had any involvement in that decision. Plaintiff complains that Zaken and Krysevig did a poor job of assisting him; however, blame for what happened cannot be attributed to them. At most, Plaintiff's allegations against them reflect negligence (that they did not pursue the issue with SCI-Camp Hill diligently enough), which falls below the constitutional threshold required to proceed in a § 1983 action. Daniels v. Williams, 474 U.S. 327, 333 (1986) ("injuries inflicted by governmental negligence are not addressed by the United States Constitution."); Kwasnik v. LeBlon, 228 F.App'x 238, 244 (3d Cir. 2007) ("Liberally construing the Amended Complaint, as we must, we conclude that the allegations, and reasonable inferences drawn therefrom, at best, merely state a negligence claim. Negligence claims are not cognizable under § 1983."); Woodward v. City of Worland, 977 F.2d 1392, 1399 (10th Cir. 1992) ("[L]iability under § 1983 must be predicated upon a 'deliberate' deprivation of constitutional rights by the defendant,' and not on negligence.").

Based upon all of the foregoing, the Court should grant Defendant's motion for summary judgment with respect to Claim 1.

**(b)     Additional claims against Krysevig and Zaken
(Claim 5 and Claim 14)**

Plaintiff makes a very general access-to-courts/retaliation claim against Zaken in the first part of paragraph 27 of his Original Complaint (Claim 5). [ECF No. 1 at ¶ 27]. In his brief opposing summary judgment, he explains that in this claim he is alleging that Zaken retaliated against him by "allowing his subordinates to continuously take and single out Plaintiff's legal materials." [ECF No. 100 at p. 28]. When a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct. Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Although a supervisor cannot encourage constitutional violations, he or she has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." Id. The supervisor must be personally involved in the alleged misconduct. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) ("Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity."). Importantly, § 1983 liability cannot be predicated solely on *respondeat superior*. Evancho, 423 F.3d at 353 quoting Rode, 845 F.2d at 1207. Plaintiff's allegations against Zaken in Claim 5 fail to establish his personal involvement in the challenged conduct and are insufficient to state a cognizable claim under § 1983.

In Claim 14, Plaintiff contends that Krysevig and Zaken denied him access to courts by "continuously denying ... [sic] to receive any assistance other than counsel or paralegal being as though I cannot properly access the materials needed to have a meaningful access to the courts[.]" [ECF No. 1 at ¶ 22]. In his opposition brief, Plaintiff explains that he is challenging Zaken's and Krysevig's "actions of not allowing [him] assistance or access to the materials needed to attack his criminal convictions or conditions of confinement – He lost several claims with merit ... as well as missed court deadlines." [ECF No. 100 at p. 22]. These assertions fail to state a viable access-to-courts claim as they lack the specificity required by Lewis v. Casey

15

and Monroe.

Defendants also are entitled to summary judgment on this claim because, as set forth in the analysis of Claim 1 and with respect to his other claims *infra*, Plaintiff has produced no admissible evidence to support his unsubstantiated allegation that personnel at SCI-Fayette, including Krysevig and Zaken, denied him access to his legal materials. Furthermore, there is no evidence in the summary judgment record to support a finding that when Plaintiff was at SCI-Fayette he was denied the access to his counsel or paralegal assistance to which he was entitled. His own exhibits show that he was repeatedly informed that he did not meet the eligibility requirements for a legal assistant because he was literate, proficient in English, and does not have a disability that substantially interferes with his ability to use or understand legal materials. [See Pl's Ex. 90, ECF No. 101-9 at p. 2].

Based upon all of the foregoing, the Court should grant Defendant's motion for summary judgment with respect to Claim 5 and Claim 14.

### (c) Retaliation claim regarding the December 6, 2005, cell search (Claim 2)

In Claim 2, Plaintiff alleges that CO Halley, CO Moats, CO Garland, Lt. Hooper, and Zaken confiscated a prepared civil complaint from his cell on December 6, 2005, in retaliation for him intending to file the complaint and for making numerous complaints against DOC staff. [ECF No. 1 at ¶ 19].

On the date in question, Plaintiff's cell was located in SCI-Fayette's LTSU. During all or most of the time that he was confined at SCI-Fayette, Manchas was the security captain, and Lt. Hooper and Lt. Nose were assigned to the security team. Among other things, the security team was responsible for conducting periodic searches in the LTSU. These searches were designed primarily to remove contraband from the institution, thus making the institution safer for both inmates and staff. [ECF No. 92, Manchas Decl. at ¶¶ 2-4; Hooper Decl. at ¶¶ 2-4; Nose Decl. at ¶¶ 2-4; Moats Decl. at ¶ 3; Garland Decl. at ¶ 3].

In addition, inmates are often brought into "property compliance" during cell searches.

As previously discussed, inmates housed in the LTSU were limited in the amount of property they were permitted to have in their cell at any given time. Any excess property, including any property confiscated during a cell search in the LTSU, was stored in the unit's property room. Inmates have the opportunity to make periodic property exchanges to access their property that is being held in storage. In order to have a property exchange, an inmate is required to submit a proper request slip. [See, e.g., ECF No. 92, Manchas Decl. at ¶ 5; Hooper Decl. at ¶ 5; Nose Decl. at ¶ 5; Crumb Decl. at ¶¶ 4-5]. Inmates are permitted to exchange legal materials from their cells with stored legal materials once every thirty days. The PRC may authorize more frequent exchanges based upon a demonstrated need that an inmate requires additional exchanges for active litigation. Such legal material exchanges, however, may not exceed one per week. [See, e.g., Pl's Ex. 42, ECF No. 101-5 at p. 2; see also ECF No. 109, 6/4/10 Hr'g Tr. at p. 5; ECF No. 112, 6/18/10 Hr'g Tr. at pp. 18, 21].

The purpose of the December 6, 2005, search of Plaintiff cell was to look for contraband. [ECF No. 92, Moats Decl. at ¶ 4; Halley Decl. at ¶ 2]. The individual defendants at issue have submitted declarations explaining that they confiscated nuisance contraband and/or garbage during that search. They maintain that to the best of their knowledge they did not confiscate a prepared civil complaint, or any other legal paperwork, from his cell, as that would not be considered contraband, and that no items were taken for retaliatory purpose. These defendants state that to the extent that any legal property was removed from Plaintiff's cell, it was because it was among his excess property. [ECF No. 92, Moats Decl. at ¶¶ 3-10; Garland Decl. at ¶¶ 3-9; Halley Decl. at ¶¶ 2-8; Hopper Decl. at ¶¶ 11-13]. That excess property would have been stored in the LTSU's property room in accordance with policy, practice, and procedure, and Plaintiff would have been able to request property exchanges to access that property. Krysevig, Zaken, Nickelson, and Crumb, among other defendants, have submitted declarations stating that they have no knowledge of anyone denying Plaintiff a properly requested property exchange. None of them denied him a properly requested property exchange. [ECF No. 92, Krysevig Decl. at ¶ 18; Zaken Decl. at ¶ 21; Nickelson Decl. at ¶ 14; Crumb Decl. at ¶ 6].

Defendants therefore have produced evidence to show that Plaintiff did not actually

sustain an adverse action, since he had access to any legal property that may have been confiscated. They also have produced evidence to show that Plaintiff's constitutionally protected conduct was not a substantial or motivating factor in any of the complained-of conduct regarding any legal property that may have been confiscated during the December 6, 2005, cell search. Even if Plaintiff had produced evidence of a *prima facie* case of retaliation, which he has not, the Defendants have put forth evidence to show that they would have taken the same action – confiscating excess property, storing it in the LTSU property room, and making it accessible only upon the filing of a properly submitted property exchange request – absent the alleged protected conduct for reasons reasonably related to a legitimate penological interest. Carter, 292 F.3d at 158; Rauser, 241 F.3d at 334.

Because Defendants have met their initial burden on summary judgment, the burden shifts to Plaintiff to produce admissible evidence from which a jury could find in his favor. He has not produced such evidence.

Based upon all of the foregoing, the Court should grant Defendant's motion for summary judgment with respect to Claim 2.

### (d) Retaliation and access-to-courts claims regarding the May 9, 2006, cell search (Claim 3, Claim 4, and Claim 7)

Plaintiff's LTSU cell was searched again on May 9, 2006. In Claim 3, he contends that during that cell search CO Chapley confiscated his legal materials in retaliation for Plaintiff having filed an excessive-force complaint against him. [ECF No. 1 at ¶ 24]. In Claim 4, Plaintiff asserts that Capt. Manchas, Lt. Hooper, and Lt. Nose violated his right to access the courts by refusing to return those legal materials to him after the May 9, 2006, cell search. [Id. at ¶ 25]. In Claim 7, he alleges that Zaken, Crumb, Nickelson, Lt. Hooper, and Capt. Manchas refused to deliver the legal material to him "out of retaliation for [his] numerous complaints." [ECF No. 38 at ¶¶ 27-28].

### (1) Retaliation allegations

In support of summary judgment on the retaliation claims, CO Chapley has submitted a

declaration in which he states that he did not "single out" Plaintiff for mistreatment, that to the best of his knowledge he did not take any of Plaintiff's legal property during any search conducted on May 9, 2006, and that any confiscated property would have been documented on a confiscation slip.[8]  CO Chapley further states that the only reason that any of Plaintiff's legal property may have been confiscated during the May 9, 2006, search was if it was among the excess property that may have been removed from his cell at that time in accordance with DOC policy.  If in fact any of Plaintiff's legal property was removed from his cell, it was stored in the LTSU property room and was available to Plaintiff by submitting a proper request slip.  [ECF No. 92, Chapley Decl. at ¶¶ 5-9].  Lt. Hooper and Lt. Nose participated in the May 9, 2006, cell search, and they have submitted declarations that are consistent in all respects with CO Chapley's.  [See ECF No. 92, Hooper Decl. at ¶¶ 6-15; Nose Decl. at ¶¶ 6-14; see also Manchas Decl. at ¶¶ 7-14].

Zaken, Crumb, Nickelson, and Krysevig also have submitted declarations stating that if any legal property was confiscated from Plaintiff's cell during the May 9, 2006, search, it was because it was among his excess property and he was able to request property exchanges to access that material.  None of them denied Plaintiff a properly requested property exchange and they have no knowledge of anyone denying Plaintiff a properly requested property exchange. [ECF No. 92, Krysevig Decl. at ¶ 18; Zaken Decl. at ¶ 21; Nickelson Decl. at ¶ 14; Crumb Decl. at ¶¶ 6-7].

Defendants thus have produced evidence refuting Plaintiff's allegations that the named defendants refused to provide him with access to any legal materials that may have been confiscated during the May 9, 2006, cell search.  Plaintiff counters by asserting that he "made several attempts to attain a legal property exchange to obtain properties taken during the May 9, 2006, search" and in supports cites to his exhibits numbered 34 and 35.  [ECF No. 101 at ¶¶ 35-36].  Documents submitted at those exhibits show that on May 16 and May 26 of 2006, Plaintiff

---

[8]  Plaintiff has submitted no admissible evidence to support his allegation [see Pl's CSF, ECF No. 101 at ¶¶ 31-35] that the items confiscated were not properly documented on the confiscation slip.

asked Zaken what he must do to get access to the legal materials confiscated during the cell search. In response, Zaken instructed Plaintiff to contact Lt. Crumb. Around that same time, Plaintiff also filed a staff request to Lt. Abrams seeking access to his property, and Lt. Abrams also instructed Plaintiff to contact Lt. Crumb. [Pl's Ex. 34, ECF No. 101-4 at pp. 4-7; see also Pl's Ex. 40, ECF No. 101-4 at p. at 48]. At Exhibit 34 Plaintiff has produced a staff request that he made to Lt. Crumb on June 9, 2006, seeking access to the confiscated material [Id. at p. 8], but he has not submitted any admissible evidence showing that Lt. Crumb denied that request. On the other hand, Defendants have submitted admissible evidence to establish that Lt. Crumb did not deny any properly requested property exchange that Plaintiff made to him. [ECF No. 92, Crumb Decl. at ¶ 6; see also Krysevig Decl. at ¶ 18; Zaken Decl. at ¶ 21; Nickelson Decl. at ¶ 14].

Other evidence submitted by Plaintiff fails to support a showing that he was denied a properly requested property exchange. On June 28, 2006, Zaken informed Plaintiff that: "Your request [for legal materials] was forwarded to me. Officer Meeker met with you today and explained that he will have you pulled out for a legal property exchange on Monday." [Pl's Ex. 40, ECF No. 101-4 at p. 47]. In response to another request seeking access to his property that Plaintiff made to "Property CO Switzer" on November 11, 2006, Plaintiff was informed: "I spoke with Lt. Crumb and if you are still in need of a legal exchange I will schedule you for either 11-21 or 11-22." [Pl's Ex. 39, ECF No. 101-4 at p. 38]. Plaintiff later submitted a staff request to CO Switzer complaining that the exchange was delayed because he was scheduled to be transferred to SCI-Forest in late November 2006. [Id. at p. 39]. Evidence that a property exchange may have been delayed/rescheduled because Plaintiff was being transferred is not evidence of retaliatory animus. Rather, it is evidence that the complained-of conduct was caused by procedural and logistical matters unrelated to any alleged improper motives.

In conclusion, Plaintiff has not directed the Court to evidence that supports the allegations of retaliation that he makes in Claims 3 and 7. In contrast, Defendants have produced evidence to show that he did not actually sustain an adverse action, since he had access to any legal property that may have been confiscated during the May 9, 2006, cell search. They

also have produced evidence to show that Plaintiff's constitutionally protected conduct was not a substantial or motivating factor in any of the complained-of conduct regarding any legal property that may have been confiscated during that search. Additionally, even if Plaintiff had produced evidence of a *prima facie* case of retaliation, which he has not, the Defendants have put forth evidence to show that they would have taken the same action – confiscating excess property, storing it in the LTSU property room, and making it accessible only upon the filing of a properly submitted property exchange request – absent the alleged protected conduct for reasons reasonably related to a legitimate penological interest. Carter, 292 F.3d at 158; Rauser, 241 F.3d at 334.

Because Defendants have met their initial burden on summary judgment, the burden shifts to Plaintiff to produce admissible evidence from which a jury could find in his favor. He has not produced such evidence.

Therefore, Defendants are entitled to summary judgment on the retaliation claims that Plaintiff makes in Claim 3 and Claim 7.

### (2) Access-to-court allegations

Plaintiff makes an access-to-courts claim in both Claim 4 and Claim 7. He first contends that as a result of the May 9, 2006, cell search he lost "claims [against] Defendants in a civil matter because of his properties not being returned." [ECF No. 100 at p. 27]. He admits, however, that he is unable to "recall all his claims and Defendants." [Id.] These allegations fail to state a viable access-to-courts claim as they lack the specificity required by Lewis v. Casey and Monroe.

Plaintiff next contends that during the cell search Defendants confiscated evidence he intended to use in his defense against the criminal charges pending against him in the Court of Common Pleas of Fayette for assaulting CO Mark Mains.[9] Plaintiff describes the confiscated

---

[9] The Court may take judicial notice of the docket sheets of the criminal case against Plaintiff before the Court of Common Pleas of Fayette County at Commonwealth of Pennsylvania v. Hankins, No. CP-26-CR 0000742-2006 (C.P. Fayette) and of his subsequent direct appeal to the

materials as:

> ... needed documents and evidence in a criminal mater [sic] brought against Plaintiff by Defendants. By not having the materials needed to formulate a proper defense, – nor a fair trial, – Plaintiff's access to the courts was not meaningful, and the outcome would have turned out differently had Defendants not acted in such a manner. In other words, Plaintiff would have been exonerated.

[ECF No. 100 at p. 27]. At another point in his opposition brief, he states:

> Amongst Plaintiff's properties taken on May 9, [2006] was a list with witnesses names needed in his criminal trial (which would have exonerated him), affidavits from witnesses (which would have exonerated him), grievances & responses which would have been used for Plaintiff's defense and also proved false statement given by the very people whom charged Plaintiff, – all of which was needed for a defense.

[ECF No. 100 at p. 30]. These allegations lack the specificity required by Lewis v. Casey and Monroe in several ways. First, Plaintiff does not explain who was on this lost witness list and what their testimony would demonstrate. Certainly, Plaintiff would remember the names of witnesses who could support his defense in a criminal trial. Second, Plaintiff does not explain what the missing affidavits said that would have exonerated him, let alone who swore to them. In an access-to-courts case it must be determined whether in fact these affidavits did contain statements that a trier of fact could conclude are exculpatory, if admitted, and this cannot be done unless the content is explained. See footnote 10 below. Finally, Plaintiff gives no explanation of the "grievances and responses" that he claims would have supported his defense to assault charges in a criminal court. There is no description given about the subject of the

---

Superior Court of Pennsylvania (which are available online at http://ujsportal.pacourts.us). On May 18, 2006, Plaintiff was arraigned on charges of second-degree felony aggravated assault for attacking SCI-Fayette personnel on December 6, 2005. He represented himself and had stand-by counsel. [ECF No. 92, Pl's Dep. Tr. at pp. 69-70]. Plaintiff originally was tried in February 2007; the jury deadlocked, and the trial court declared a mistrial. Plaintiff's second trial resulted in a verdict of guilt and he was sentenced on February 8, 2008, to 22-44 months' imprisonment. Plaintiff filed an appeal and contended that the Commonwealth introduced insufficient evidence to support the verdict. On May 11, 2010, the Superior Court of Pennsylvania issued a Memorandum and affirmed the judgment of sentence. Commonwealth of Pennsyvlania v. Hankins, No. 1177 WDA 2009, slip op. (Pa.Super. May 11, 2010). Plaintiff filed a petition for allowance of appeal with the Supreme Court of Pennsylvania, which is pending before that court at Docket Number 294 WAL 2010.

grievances and the content and author of the responses. This is not enough to survive summary judgment. Such specificity is required or any broad claim could be used to base an access-to-courts claim His broad contention that he was denied access to exculpatory evidence and his very general description of that evidence is insufficient to proceed with an access-to-courts claim at this stage of the litigation.

Defendants also are entitled to summary judgment on these access-to-courts allegations for several additional reasons. First, as discussed above, Defendants have submitted admissible evidence to show that Plaintiff was not prevented from accessing any legal property that may have been confiscated during the May 9, 2006, cell search and Plaintiff has not submitted any admissible evidence to refute their evidence.

Second, Plaintiff has not shown that he was foreclosed from seeking adequate legal redress for what he alleges happened to his evidence during his criminal proceeding. He had the opportunity to argue before the Court of Common Pleas that Commonwealth officials were preventing him from accessing his evidence and/or had destroyed some of his evidence. If that court found merit in his allegations, it would have granted Plaintiff the appropriate relief.[10] To the extent that the Court of Common Pleas did not resolve his allegations to his satisfaction, he could have challenged that decision on appeal.

For this same reason, it appears that Plaintiff's allegations also are barred by the rule announced in Heck v. Humphrey, 512 U.S. 477 (1994). In that decision, "the Supreme Court held that where success in a § 1983 action would implicitly call into question the validity of conviction or duration of sentence, the plaintiff must first achieve favorable termination of his available state or federal habeas remedies to challenge the underlying conviction of sentence." Williams v. Consovoy, 453 F.3d 173, 177 (3d Cir. 2006). See also id. quoting Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) ("a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of

---

[10]  Plaintiff explained during his deposition that some of his confiscated evidence consisted of affidavits from other inmates as well as grievances that they filed. He admitted that the trial court had ruled that that evidence was inadmissible. [ECF No. 92, Pl's Dep. Tr. at pp. 69-70].

the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – if success in that action would necessarily demonstrate the invalidity of the confinement or its duration."). Because success on Claims 4 and 7 would implicitly call into question the validity of his Fayette County conviction – a conviction that has not been overturned – the claims are barred by Heck.

For each of the aforementioned reasons, Defendants are entitled to summary judgment on the access-to-court claims raised in Claim 4 and Claim 7.

### (e) Telephoning a private investigator (Claim 6)

In Claim 6, Plaintiff contends that Popovich, Harris, Burns, Nickelson, and Armel retaliated against him by preventing him from telephoning a private investigator hired by his mother after Krysevig had given him permission to make the call. [ECF No. 1 at ¶ 27].

Defendants have submitted evidence to show that Plaintiff was on the most restrictive LTSU phase for the vast majority, if not all, of the time he was housed at SCI-Fayette. Inmates who were on the most restrictive LTSU phase were not permitted to make any telephone calls, except under certain emergency circumstances.[11] Therefore, Plaintiff was not permitted to make any telephone calls, unless it was found that he was faced with a legitimate emergency. [ECF No. 92, Krysevig Decl. at ¶¶ 9-11; Zaken Decl. at ¶¶ 9-11; Nickelson Decl. at ¶¶ 5-7; Burns Decl. at ¶¶ 5-7; Popovich Decl. at ¶¶ 5-7].

Defendants explain that to extent that Plaintiff was denied the opportunity to make a call to a private investigator, it was because he was not permitted to make such a phone call per LTSU policy. Such a request "could hardly be considered an emergency warranting a departure from policy" and Plaintiff could correspond with the investigator through the mail. [ECF No.

---

[11] Defendants explain that Plaintiff may have progressed to the next most restrictive phase for a brief period of time, but he did not progress any further in the program. Inmates on the next most restrictive phase were permitted one telephone call per month. LTSU inmates were encouraged to address non-emergency matters through written correspondence rather than by making additional phone calls. [ECF No. 92, Krysevig Decl. at ¶¶ 10-11].

92, Krysevig Decl. at ¶¶ 12-15; Zaken Decl. at ¶¶ 14-16; Nickelson Decl. at ¶¶ 10-11; Burns Decl. at ¶¶ 10-11; Popovich Decl. at ¶¶ 11-12; see also Defs' Ex. F at ¶ 3; Defs' Ex. G at ¶ 3].

Krysevig also expressly denies that he approved a request made by Plaintiff to call a private investigator. [ECF No. 92, Krysevig Decl. at ¶¶ 12-14]. According to Popovich, telephone calls for LTSU inmates had to be approved by the PRC. He recalls a situation where Plaintiff wanted to call a private investigator. He informed Plaintiff that he could not approve the phone call himself, and that he could not provide it unless it was approved by the PRC. [ECF No. 92, Popovich Decl. at ¶¶ 8-12]. He and Krysevig explain that it is possible that, in response to Plaintiff's request for a phone call, the PRC told Plaintiff that it would "discuss the matter." [ECF No. 92, Krysevig Decl. at ¶ 13; Popovich Decl. at ¶¶ 9-11]. However, a review of Plaintiff's PRC records shows that the PRC never approved such a phone call. ECF No. 92, Krysevig Decl. at ¶¶ 12-14; Zaken Decl. at ¶¶ 14-15; Nickelson Decl. at ¶ 10; Burns Decl. at ¶ 10; Popovich Decl. at ¶ 11; see also Defs' Ex. F at ¶ 3; Defs' Ex. G at ¶ 3].

In his opposition brief, Plaintiff acknowledges that telephone calls for LTSU prisoners had to be approved by the PRC. [ECF No. 100 at p. 29]. He contends that the PRC approved a phone call for him. In support of this factual assertion, he cites to paragraph 69 of his declaration. Plaintiff's declaration does not contain that paragraph (nor does it contain admissible evidence since it is not signed under penalty of perjury). He also cites to Pl's Exs. 19-23. None of the exhibits he filed with the Court are identified by those numbers. It appears that his intent is to cite to Armel's and Harris' *Response to Plaintiff's Requests for Admissions*. [See ECF No. 100 at p. 29]. Defendants have filed those documents with the Court as Defs' Exs. F and G [see ECF No. 92]. They provide no support for Plaintiff's factual allegation.

In sum, absent from the summary judgment is any factual support for the retaliation allegations Plaintiff makes in Claim 6. Therefore, Defendants are entitled to summary judgment on this claim.

### (f)     Claim against Scire (Claim 13)

Claim 13 is Plaintiff's final claim against an SCI-Fayette Defendant. In this claim, he

asserts that Carol Scire, who during all times relevant to this action was employed as the Superintendent's Assistant, retaliated against him and denied him access to courts because she refused his request for documents he "needed for [his] defense in a criminal matter." [ECF No. 38 at ¶¶ 39, 42-44]. In his opposition brief, Plaintiff more specifically contends that he seeks to hold Scire liable because she refused his request for "a computer printout of grievances submitted" by him, which "would have provided [him] with evidence in his criminal trial which would have presented a reasonable doubt in the minds of the jury. The material was also need[ed] to refute Defendants' summary judgement in Plaintiff's civil action[.]" [ECF No. 100 at p. 39]. Plaintiff also has submitted a letter that he sent to Scire on February 9, 2007, in which he requested "[a] computer printout of all grievances that I've filed while housed" at SCI Fayette, upon which Scire wrote the one-word answer "No." [Pl's Ex. 61, ECF No. 101-6 at pp. 16-17].

When asked about this claim during his deposition, Plaintiff could not explain why the requested grievances were relevant to any pending case. He asserted that he believes that the documents would have shown reasonable doubt as to whether he assaulted Officer Mains. He could not articulate why he thinks these grievances could have shown reasonable doubt in a way that the trial testimony that he gave in his defense did not. [ECF No. 92, Pl's Dep. at pp. 71-72].

Defendants are correct that they are entitled to summary judgment on the access-to-court portion of this claim because his allegations lack the specificity required by Lewis v. Casey and Monroe. Additionally, Plaintiff also had the opportunity to seek legal redress of this claim during his criminal proceeding and the allegations are barred by Heck.

Defendants also are entitled to summary judgment on the retaliation portion of this claim. Scire has submitted a declaration in which she states that she does not specifically recall ever refusing to deliver any documents to Plaintiff. If she did not deliver any printout of his grievances, it would have been because he did not comply with the dictates of DC-ADM 003. This policy governs the release of information to inmates. Pursuant to this policy, an inmate must pay a search and retrieval fee in order to obtain certain documents from the institution. That fee is established by policy. If an inmate indicates that the requested documents are

necessary to properly effectuate final appeal of a grievance, the search and retrieval fee is waived. Except for this exception, relevant policy requires that the inmate pay the search and retrieval fee. In addition, the inmate must pay a per-page copying fee, which is also set by DC-ADM 003. If an inmate is indigent, he can use his anticipated postage to pay for the copying fee set by DC-ADM 003. [ECF No. 92, Scire Decl. at ¶¶ 4-13].

Even if Plaintiff had produced evidence of a *prima facie* case of retaliation, which he has not, the Defendants have put forth evidence to show that Scire would have taken the same challenged action absent the alleged protected conduct for reasons reasonably related to a legitimate penological interest. <u>Carter</u>, 292 F.3d at 158; <u>Rauser</u>, 241 F.3d at 334. Because Defendants have met their initial burden on summary judgment, the burden shifts to Plaintiff to produce admissible evidence from which a jury could find in his favor. He has not produced such evidence.

Accordingly, for each of the aforementioned reasons, Defendants are entitled to summary judgment on Claim 13.

### 4. Claims against the SCI-Forest Defendants

Plaintiff was transferred from SCI-Fayette to SCI-Forest's RHU on November 27, 2006. He arrived there at approximately 1:26 p.m. Lt. Burkhart was the 6-2 shift Lieutenant and he supervised the in-processing procedure of Plaintiff. Lt. Steele was the 2-10 shift Lieutenant. [ECF No. 32, Burkhart Decl. at ¶ 3; Steele Decl. at ¶ 2].

### (a) Access-to-court allegations

In Claim 8, Plaintiff contends that when he first arrived at SCI-Forest, Lt. Steele and Lt. Burkhart denied him access to his legal property, the law library, writing paper, and envelopes and that as a result he missed "a court deadline he had of Nov. 29 or 30, 2006." [ECF No. 38 at ¶ 30]. When asked about this allegation during his deposition, Plaintiff stated that he did not know what case the alleged deadline was for and does not know what happened to the case. [ECF No. 92, Pl's Dep. Tr. at pp. 65-66]. He cannot proceed with Claim 8's access-to-

court allegations as they lack the specificity required by <u>Monroe</u> and <u>Lewis v. Casey</u>.

In Claim 9, Plaintiff contends that Lt. Burkhart "had Plaintiff's legal and other properties confiscated on several occasions." [ECF No. 38 at ¶ 33]. In Claim 11 he contends that Lt. Burkhart did not permit him to conduct legal property exchanges on unspecified dates, including immediately before he was scheduled to attend a court hearing. [<u>Id.</u> at ¶¶ 34-36]. In Claim 12 he summarizes that the basis of his claims is that both Lt. Burkhart and Lt. Steele denied him "access to: the legal materials within Plaintiff's properties needed to address counsel, prepare a proper defense, as well as access to the courts to have a fair trial." [<u>Id.</u> at ¶ 37]. All of these allegations lack the specificity required by <u>Monroe</u> and <u>Lewis v. Casey</u>. Moreover, in his opposition brief Plaintiff explains that in each of these claims he is contending that Lt. Burkhart's and Lt. Steele's alleged actions interfered with his ability to present evidence in his defense in the criminal assault case that was ongoing at the time in Fayette County for assaulting Officer Mains. [<u>See</u> ECF No. 100 at pp. 32-38; <u>see also</u> ECF No. 92, Pl's Dep. Tr. at pp. 65-70]. Such allegations do not survive summary judgment, for all of the reasons set forth above in addressing the similar allegations he made in Claim 4, Claim 7, and Claim 13. That is, because Plaintiff had the opportunity to seek legal redress of these allegations during his criminal proceeding and the allegations are barred by <u>Heck</u>.

Therefore, Defendants are entitled to summary judgment on the access-to-courts claims that Plaintiff makes in Claims 8 through Claims 12.

### (b) Retaliation allegations

Plaintiff also makes retaliation allegations against Lt. Burkhart and Lt. Steele in Claim 8 through Claim 12. Specifically, he contends that they denied him access to his property, the law library, and to a haircut in retaliation because they had been informed about all of the lawsuits and grievances that he had filed against other DOC personnel. [ECF No. 38 at ¶¶ 30-37].[12]

---

[12] Plaintiff initially contended that Lt. Burkhart and Lt. Steele confiscated his property. They deny those allegations and Plaintiff admits that he has no evidence to support them. He now claims instead that they denied him access to his property that was in the RHU storage. [ECF No.

In support of their motion for summary judgment on these retaliation claims, Lt. Burkhart and Lt. Steele have submitted declarations to show that the reason that Plaintiff did not have all of his property immediately upon his arrival to SCI-Forest is that it had to first be searched by Receiving and Discharge ("R&D"). This process usually takes two to three days. Lt. Steele and Lt. Burkhart had nothing to do with this process, and could not act to facilitate or expedite it in any way. Therefore, to the extent there was any delay in Plaintiff receiving his property upon his arrival at SCI-Forest, it was due to the requirement that it be screened by R&D before being delivered to him. Such a delay was not the result of any action or inaction on the part of Lt. Burkhart or Lt. Steele, but rather the result of standard security procedures in place at the institution. [ECF No. 92, Burkhart Decl. at ¶¶ 7-8; Steele Decl. at ¶¶ 9-10].

Defendants do not deny that when Lt. Burkhart completed a movement restriction form, he erroneously marked that Plaintiff should be on law library restriction. This occurred when Plaintiff first arrived at SCI-Forest. Lt. Burkhart explains that he did so because he was new in the RHU, and believed that any inmate who was on movement restriction was supposed to be on law library restriction as well. [ECF No. 92, Burkhart Decl. at ¶¶ 9-10]. Plaintiff was only on library restriction for approximately two days. He was seen by the PRC on the morning of November 30, 2006, and the PRC promptly lifted his law library restriction and informed Lt. Burkhart that an inmate is not supposed to be placed on law library restriction unless certain circumstances are met, none of which had been met in Plaintiff's case. [ECF No. 92, Burkhart Decl. at ¶ 11; see also Defs' Ex. U at ¶ 3].

Regarding Plaintiff's allegations that he was denied a haircut, Lt. Burkhart explains that in the RHU, inmates who desire a haircut can receive one on the second Saturday of each month, assuming they have been at the institution for at least 30 days. Lt. Burkhart does not recall ever denying Plaintiff the opportunity to have a haircut, however, if he did, it was because he was not entitled to one per policy, either due to the fact that he had not been at SCI-Forest long enough, or that he was requesting one on a date other than that on which haircuts were

_____

100 at p. 37].

provided. [ECF No. 92, Burkhart Decl. at ¶ 19]. When asked about this allegation during his deposition, Plaintiff could not recall when he was denied a haircut or what hearing he was scheduled to attend the day he was allegedly denied a haircut. [ECF No. 92, Pl's Dep. Tr. at p. 64].

Finally, much of the retaliation allegations Plaintiff makes in his opposition brief center upon his complaints regarding the DOC policies that permitted him to have only one box of property in his RHU cell and that limited the number of property exchanges he could have to one per month, unless he received approval to have one per week. [ECF No. 100 at pp. 34-38]. He faults Lt. Steele for denying his request to have a property exchange once a week. He also faults him for not allowing him to have two boxes in his cell. He has not, however, directed the Court to any evidence in the record that shows that Lt. Steele was authorized to grant him such requests. He cites to Pl's Exs. 70-78 [see ECF No. 100 at pp. 35-37], but those exhibits do not support his allegations. These exhibits show that Lt. Steele told him that he needed PRC approval to have a property exchange once a week or to have more than one records box in his cell. [ECF No. 101-7 at p. 8]. They also show that Plaintiff's request for such approval was denied. [Id. at pp. 1-36].

In contrast to Plaintiff's unsupported allegations, Lt. Steele has submitted a declaration stating that he never denied Plaintiff a properly requested legal property exchange. He further states that if Plaintiff requested an exchange and was entitled to one per policy, he would have provided him with an exchange. [ECF No. 92, Steele Decl. at ¶ 16].

Defendants also have produced evidence to show that property exchanges are conducted by the 2-10 shift. Therefore, Lt. Burkhart had nothing to do with whether Plaintiff was able to conduct property exchanges. [ECF No. 92, Burkhart Decl. at ¶ 15]. In response to Plaintiff's allegation that he denied his request to have a property exchange right before he left the institution to attend a court hearing, Lt. Burkhart explains that if he ever did so it was because there was insufficient time to conduct such an exchange. It is unrealistic for an inmate to expect to be able to conduct a property exchange near the time he is scheduled to be transported. [ECF No. 92, Burkhart Decl. at ¶¶ 21-22].

In conclusion, Plaintiff has not directed the Court to evidence that supports the allegations of retaliation that he makes in Claim 8 through 12. In contrast, Defendants have produced evidence to show that Plaintiff cannot establish a *prima facie* case of retaliation. As to all of these situations, Defendants have put forth evidence to show that they would have taken the same challenged actions absent the alleged protected conduct for reasons reasonably related to a legitimate penological interest. Carter, 292 F.3d at 158; Rauser, 241 F.3d at 334.

Because Defendants have met their initial burden on summary judgment, the burden shifts to Plaintiff to produce admissible evidence from which a jury could find in his favor. He has not produced such evidence.

Therefore, Defendants are entitled to summary judgment on the retaliation claims that Plaintiff makes in Claims 8 through Claims 12.

## III    CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' Motion for Summary Judgment [ECF No. 91] be granted. It is further recommended that Plaintiff's motion for a temporary and preliminary injunction [ECF No. 116] be denied and that the Clerk of Courts be directed to close this case.

In accordance with Fed.R.Civ.P. 72, the parties are allowed fourteen (14) days from the date of serve to file written objection to this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. No extensions of time will be granted. Failure to file timely objections may constitute waiver of appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).


S/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

31

Dated: August 26, 2010